IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **LATRON DUPREE BROWN,** ) | |
| Petitioner, ) | |
| ) | Civil Action No. 7:20cv00196 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| **HAROLD W. CLARKE, DIRECTOR,** ) | United States District Judge |
| Respondent. ) | |

## MEMORANDUM OPINION

Petitioner Latron Dupree Brown, a Virginia inmate proceeding *pro se,* filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. §2254, challenging his incarceration under a judgment order from Augusta County Circuit Court, entered June 29, 2017, sentencing him to three years in prison, with two years suspended, for unlawful wounding. Respondent has filed a motion to dismiss the petition, arguing that the habeas decision from the Supreme Court of Virginia is neither contrary to nor an unreasonable application of federal law, nor does the decision involve an unreasonable determination of facts. After careful review of Brown's petition, his reply to the motion to dismiss, and the entire record of proceedings in the state court, the court agrees that the state habeas decision is not unreasonable. Therefore, the court must grant the respondent's motion to dismiss and will deny a certificate of appealability.

I. BACKGROUND

**A. Factual Background**

Considering the evidence in the light most favorable to the Commonwealth, the prevailing party at trial, the evidence established that on the morning of August 1, 2016, Brown, an inmate at Augusta Correctional Center in Augusta County, Virginia, was involved in an incident with another inmate, Ronald Brown (hereafter, "Ronald," to avoid confusion) on the

"Boulevard," a grassy common area between buildings in the correctional complex. Corrections Officer Phillina Middleton testified that she saw the two inmates from a distance, when Ronald was on the ground, not moving, and Brown was on top of Ronald's chest, striking Ronald in the face six to eight times. She did not see what had started the altercation. Before she could reach the men, they had separated and gone in different directions. When she approached Brown and asked him about the incident, he said that he was not fighting; he was just trying to stop it. Habeas R.[1] at 103–109.

Ron Hall, Assistant Chief of the Virginia Department of Corrections Special Investigations Unit, investigated the incident, interviewing the officers, Brown, and Ronald. When Hall spoke with Brown on August 3, 2016, after advising him what the interview was about, Brown stated that he had not done anything wrong. When told that the altercation was recorded by the Rapid Eye Video system, Brown said he was just defending himself, and if they had the video, they should know that. Brown refused to say anything further. Because no one had the appropriate technology to play the video in court, Hall testified about what he saw on the video. He testified that he saw both men walking, and then they were taking swings at each other. They ended up on the ground at some point, and one man was on top of the other, punching him for 48 seconds. The video was not clear enough for him to identify either man in the fight. Hall also identified a photo of Ronald, taken on August 3, 2016, showing that Ronald had bruising and swelling on both eyes, sutures in the outside corners of both eyes, and sutures above his left eye. Habeas R. at 110–115.

Ronald was an uncooperative witness for the Commonwealth, attempting to take the Fifth Amendment when asked questions about the incident. When told that he could not take the Fifth

---

[1] Citations to the record of the habeas case in the Supreme Court of Virginia, Record No. 190396, will be to "Habeas R.," using the typed page numbers in the bottom left corner of each page.

Amendment, Ronald's answers changed to "I can't recall."  Habeas R. at 117.  The only information he gave is that in a photo he was shown from the video, the person on the ground looked like him.  He also testified that he was 5'5" tall and 150 pounds; Ronald estimated Brown at 5'6" and 160 pounds.  Habeas R. at 116–120.

After the Commonwealth's case, Brown testified that he had been at Augusta Correctional Center for about one month before the incident.  He had been told that Ronald expected some money from him, and he was not willing to pay.  While on the way back from the breakfast chow line, he saw Ronald and told him he was not going to pay him anything.  Brown testified that Ronald then struck him, and he tried to defend himself.  When they fell to the ground, he struggled to get on top of Ronald, because he was afraid of what would happen if Ronald got on top of him.  He pinned Ronald to the ground, as Ronald continued to try and fight him.  He struck Ronald just enough to get him subdued, so that Ronald would not start the assault again as soon as they got off the ground.  He strongly felt that he had to defend himself in this way, and that he did not strike Ronald more than was necessary to get him to stop trying to hit him.  Two other inmates from Augusta Correctional Center also testified, indicating that they had not known Brown or Ronald previously.  They were on the Boulevard when Ronald lunged toward and struck Brown, requiring Brown to defend himself.  One witness testified that he never saw Brown hit Ronald, only pin him to the ground; the other testified that Brown hit him two or three times, just until Ronald stopped struggling.  Habeas R. at 125–160.

**B. Procedural History**

A grand jury indicted Brown for one count of unlawful wounding in violation of Virginia Code § 18.2-51.  Brown waived a jury and proceeded to a bench trial on June 26, 2017.  Following presentation of the evidence, the court found him guilty of unlawful wounding,

finding that the force used for self-defense was excessive. Both parties waived a presentence report, and the court sentenced Brown to three years in the penitentiary, with two years suspended, resulting in a sentence one month above the low end of the guidelines. The judgment order was entered June 29, 2017. (Br. in Supp. of Mot. to Dismiss, Resp's Ex. 1, Dkt. No. 10-1.)

Brown appealed his conviction to the Court of Appeals of Virginia, challenging the sufficiency of the evidence to support his conviction. By opinion dated February 28, 2018, the court denied his appeal. The Supreme Court of Virginia refused his appeal on August 31, 2018. Brown did not seek certiorari from the United States Supreme Court.

On March 28, 2019, Brown filed a petition for habeas corpus in the Supreme Court of Virginia, raising the same issues raised in the current petition. For reasons discussed more fully below, the state court dismissed his petition on December 4, 2019. Brown filed the current § 2254 petition on March 30, 2020, raising the following issues:

(1) That his right to due process was violated by the Government's failure to permit him or the court to view the Rapid Eye Video, in violation of *Brady*,[2] which denied Brown the opportunity to prepare a defense interpretation of the video.

(2) That his trial counsel was ineffective because he failed to provide petitioner with a copy of the video from the Rapid Eye Video system.

## II. DISCUSSION

**A. Standard of Review and Limitations on Federal Habeas Corpus Relief**

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts reviewing constitutional claims that have been

---

[2] In *Brady*, the Supreme Court held that due process requires a prosecutor to disclose material, potentially favorable evidence in its possession to the defendant before trial. *Brady v. Maryland*, 373 U.S. 83 (1963).

adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). There is a presumption of correctness that attaches to the state court's finding of facts, which can be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e).

A federal district court reviewing a § 2254 petition is also limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. The standard of review and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

**B. Analysis of Claims**

   **1. Due process/*Brady* claim**

The state habeas court held that Brown had procedurally defaulted this issue because he did not raise the objection at trial and on direct appeal. Habeas R. at 218. Under well-settled principles of Virginia law, a prisoner cannot raise a claim in habeas that could have been raised, but was not, at trial and on direct appeal. *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 974). When the state relies upon an independent and adequate state law procedural ground to dismiss a habeas claim, the federal claim is also procedurally defaulted, unless the petitioner can show cause and actual prejudice for the default. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

5

Cause for procedural default requires the existence of some objective factor, external to the defense and not fairly attributable to the prisoner. *Coleman*, 501 U.S. at 756–57. Examples of good cause for procedural default include interference by government officials that makes compliance impossible or impractical, such as failing to provide trial transcripts, coercion, or acts or omissions of prison officials. *Murray v. Carrier*, 477 U.S. 478, 488. Negligence of state trial counsel is generally not adequate cause for default unless it rises to the level of constitutionally ineffective assistance of counsel. *Id.* at 486. Brown states that the reason the issue was not raised at trial was because the same attorney who represented him at trial also represented him on appeal and would not raise the issue.

Counsel's failure to raise this issue does not constitute ineffective assistance of counsel because the issue has no merit, as discussed below. Even if the issue had merit, counsel is not required to raise every nonfrivolous issue desired by the defendant, as choosing which issues to raise is a matter of professional judgment and trial strategy. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *Smith*, 477 U.S. at 536. Such strategic decisions of counsel are given the highest deference by courts reviewing the effectiveness of counsel. *Strickland v. Washington*, 466 U.S. 668, 689–90 (1984). Thus, Brown cannot show cause for his procedural default.

Further, Brown can show no prejudice because there was no *Brady* violation, clearly making this an issue without merit. First, by all accounts except for Brown's, the video was not favorable. Second, the video was made available for defense counsel's review under the Commonwealth Attorney's Office's open-file review policy. Counsel viewed the video more than two months before trial and took notes on it. His simultaneous notes substantially

corroborate the testimony of Investigator Ron Hall at trial. In his affidavit filed with the state habeas court, counsel represented that he discussed the video with Brown on April 24, 2017, and again on June 22, 2017, just a few days before trial. He did not recall Brown ever asking to see the video before trial, and at any rate, counsel lacked the necessary equipment to play the video for Brown, especially at the jail. Counsel acts as an agent for his client. *Farabee v. Clarke*, 967 F.3d 380, 392 (4th Cir. 2020). By making the video available to defense counsel for viewing, the Commonwealth satisfied its obligation under *Brady* and under the applicable Rules of Discovery in Virginia in effect in 2017. Rule 3A:11, Rules of the Supreme Court of Virginia. Because there was no *Brady* violation, there can be no prejudice from the non-existent violation.

Because Brown has shown neither good cause nor prejudice to overcome his procedural default of this issue, the court will dismiss this claim.

### 2. Ineffective assistance of counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment *and* (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Petitioner must satisfy both prongs of this test. The state habeas court held that Brown did not meet his burden of proving either prong. Habeas R. at 219.

Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's actions fell within the wide range of reasonable strategy decisions. *Id.* at 689–90. The *Strickland* standard is "doubly deferential" in the context of a habeas petition, because the deferential standard of review required by § 2254 overlaps with the deferential standard under

*Strickland. Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). In other words, federal courts on habeas review are to give the benefit of the doubt to both the state court and the defense attorney. *Woods*, 136 S. Ct. at 1151. To establish prejudice, Brown must show that there is a "reasonable probability that the outcome of the proceedings would have been different" but for the deficient performance, which means "a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

The question is not whether "a federal court believes the state court's determination under the *Strickland* standard was incorrect, but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirazavance*, 556 U.S. 111, 123 (2009). "This double-deference standard effectively cabins our review to determining whether there is *any reasonable argument* that counsel satisfied *Strickland's* deferential standard." *Owens v. Stirling*, 967 F.3d 396, 412 (4th Cir. 2020) (emphasis added). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Surmounting *Strickland*'s standard is never an easy task, but "establishing that a state court's application of *Strickland* is unreasonable under § 2254(d) is all the more difficult." *Id.* at 105.

Applying this standard to the state's habeas decision herein, as the court must do, this court cannot say that the state court's findings are unreasonable. As to performance, reviewing the video in its entirety, taking notes, and discussing the video with the defendant and its likely damaging effect on the case can be considered adequate performance under the technological restraints faced by counsel. The affidavit and accompanying evidence support the state court's factual determination, which is binding on this court unless overcome by clear and convincing evidence. 28 U.S.C. § 2254(e). While finding a way to show the video to Brown in advance might be the gold standard of representation, *Strickland* does not mandate the best possible

8

performance, only reasonable performance under prevailing professional norms. 466 U.S. at 690.

Nor was the state court unreasonable in finding that Brown was not prejudiced by failure to see the video. The trial court accepted that Brown had not started the altercation. The basis for the court's decision was that Brown's use of force to defend himself was excessive under the circumstances. Forty-eight seconds of repeatedly hitting a restrained person in the face can reasonably be perceived as excessive, especially given the injuries sustained by Ronald, which required stitches in three different locations, including around both eyes. Brown's own testimony confirmed that he was the person on top, striking the person on the bottom. Habeas R. at 151. Because the court accepted that Brown did not instigate the altercation, there is nothing he has alleged that the video would show which was not already brought to the trial court's attention. Accordingly, the state habeas court's decision is a reasonable determination of facts and application of law, and the court must dismiss this claim.

### III. CONCLUSION

For the reasons discussed above, the court will grant the respondent's motion to dismiss.

Further, when issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 83–84 (2000). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural

ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. *Gonzales v. Thaler*, 565 U.S. 134, 140–41 (2012). Brown has not made such showings in this case, and a certificate of appealability will be denied.

    An appropriate Order will be entered.

    Entered: May 28, 2021.

                                          /s/ Elizabeth K. Dillon
                                          Elizabeth K. Dillon
                                          United States District Judge